IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LEGACY FOUNDATION ACTION FUND, *Plaintiff/Appellant*,

*v.*

CITIZENS CLEAN ELECTIONS COMMISSION, *Defendant/Appellee*.

No. 1 CA-CV 19-0773
FILED 1-20-2022

Appeal from the Superior Court in Maricopa County
Nos.  CV2018-004532
CV2018-006031
(Consolidated)
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

COUNSEL

Bergin Frakes Smalley & Oberholtzer PLLC, Phoenix
By Brian M. Bergin
*Co-counsel for Plaintiff/Appellant*

Holtzman Vogel Josefiak PLLC, Warrenton, VA
By Jason Brett Torchinsky
*Co-counsel for Plaintiff/Appellant*

Osborn Maledon PA, Phoenix
By Mary R. O'Grady, Joseph N. Roth
*Counsel for Defendant/Appellee*

---

**OPINION**

Presiding Judge Randall M. Howe delivered the opinion of the court, in which Chief Judge Kent E. Cattani joined. Judge Cynthia J. Bailey dissented.

---

**H O W E**, Judge:

¶1        Legacy Foundation Action Fund appeals the trial court's dismissal of its special-action complaint and granting summary judgment to the Citizens Clean Election Commission in the Commission's separate enforcement action. Legacy argues that its special-action complaint was an appropriate collateral attack on the Commission's jurisdiction. The Commission argues that because Legacy had challenged its jurisdiction in the administrative proceeding and failed to seek timely review of that decision, Legacy is precluded from collaterally attacking its jurisdiction now.

¶2        We hold that an administrative agency's jurisdiction cannot be collaterally attacked by a party that challenged the agency's jurisdiction administratively but failed to timely appeal the agency's decision. Accordingly, we affirm the trial court's dismissal of Legacy's special-action complaint and its granting the Commission summary judgment.

## FACTS AND PROCEDURAL HISTORY

¶3        Legacy is a non-profit corporation that aired political advertisements in Arizona in 2014. The Commission then received a complaint alleging that Legacy had violated the Citizens Clean Elections Act, A.R.S. §§ 16–940 to –961. The Commission believed that Legacy had violated the Act's independent reporting requirements, and—after holding a hearing—assessed Legacy $95,460 in penalties. *See* §§ 16–941(D), –957(A)–(B). Legacy sought administrative review, arguing in part that the Commission lacked subject-matter jurisdiction to assess the penalty. The Commission, however, rejected that argument and, in March 2015, entered a final administrative order imposing a civil penalty of $95,460 against Legacy.

¶4        Eighteen days after the Commission issued its final administrative order, Legacy sought judicial review, arguing that the Commission lacked personal and subject-matter jurisdiction. The trial court

dismissed the appeal, concluding that it lacked jurisdiction because Legacy missed the 14-day deadline to appeal under A.R.S. § 16–957(B). Legacy appealed the trial court's dismissal of its appeal, but this court and our supreme court upheld the dismissal. *See Legacy Found. Action Fund v. Citizens Clean Elections Comm'n*, 243 Ariz. 404, 408 ¶¶ 19–20 (2018) (*Legacy I*). In doing so, our supreme court noted that it "express[ed] no view on whether Legacy [could] pursue alternative procedural means to challenge the Commission's penalty order as void." *Id.* at ¶ 19.

¶5      On remand, the Commission sought judgment in the trial court against Legacy for the full amount of the final administrative order. The same day, Legacy brought a special action in the trial court, alleging in part that the Commission lacked subject-matter jurisdiction over the matter, and the court consolidated the two cases. Both parties moved to dismiss, and the trial court granted the Commission's motion, dismissed Legacy's special-action complaint, and denied Legacy's motion to dismiss.

¶6      The parties then each moved for summary judgment on the Commission's enforcement of the final administrative order. In ruling on the motions, the trial court characterized Legacy's arguments as asking the court to set aside the Commission's factual findings. The court concluded that the findings could not be set aside and granted the Commission summary judgment. Legacy timely appealed.

## DISCUSSION

¶7      Legacy argues that the trial court erred in dismissing its special-action complaint and granting the Commission summary judgment, thereby enforcing the Commission's final administrative order. Legacy contends that its special-action complaint was an appropriate collateral challenge to the Commission's subject-matter jurisdiction. We review the dismissal of a complaint de novo, assuming as true the complaint's well-pleaded facts, and we will affirm when, as a matter of law, the plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof. *Hopi Tribe v. Ariz. Snowbowl Resort Ltd. P'ship*, 245 Ariz. 397, 400 ¶ 8 (2018).

¶8      Legacy is precluded from collaterally attacking the Commission's exercise of subject-matter jurisdiction. "[A]dministrative decisions which go beyond an agency's statutory power are vulnerable for lack of jurisdiction and may be questioned in a collateral proceeding." *Ariz. Bd. of Regents for & on Behalf of Univ. of Ariz. v. State*, 160 Ariz. 150, 156 (App. 1989). However, "[f]ailure to appeal a final administrative decision makes

that decision final and *res judicata*." *Gilbert v. Bd. of Med. Exam'rs*, 155 Ariz. 169, 174 (App. 1987), *superseded on other grounds by statute as stated in Goodman v. Samaritan Health Sys.*, 195 Ariz. 502, 508 ¶ 25 n.7 (App. 1999).

**¶9** Under the doctrine of *res judicata* (now referred to as "claim preclusion"), "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *In re Gen. Adjud. of All Rights to Use Water in Gila River Sys. & Source*, 212 Ariz. 64, 69 ¶ 14 (2006) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). Final administrative orders are final judgments for purposes of claim preclusion. *See Hawkins v. State*, 183 Ariz. 100, 104 (App. 1995) ("Where a party does not appeal a final administrative decision that decision becomes final and *res judicata*."). The principles of claim preclusion "apply to jurisdictional determinations—both subject matter and personal." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982). "A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment." *Id.*; *see also* Restatement (Second) of Judgments § 12 (1982) (parties are precluded from litigating the court's subject-matter jurisdiction in subsequent litigation except in limited circumstances).

**¶10** Legacy and the Commission were parties to the administrative proceeding, and Legacy challenged the Commission's subject-matter jurisdiction in that proceeding. Eighteen days after the Commission issued its final order, Legacy appealed to the trial court, arguing that the Commission had lacked personal and subject-matter jurisdiction over the matter. But the trial court dismissed the appeal as untimely because Legacy had appealed after the 14-day deadline under A.R.S. § 16–957(B). The Commission's administrative order became final after our supreme court affirmed the trial court's dismissal of Legacy's untimely appeal.

**¶11** Having litigated subject-matter jurisdiction in the administrative proceeding and having failed to timely appeal the final ruling on the merits by direct review, Legacy cannot raise the issue again in a new proceeding. *See Gilbert*, 155 Ariz. at 176 ("No timely appeal having been taken, the decision of the board is conclusively presumed to be just, reasonable[,] and lawful."); *see also* Restatement (Second) of Judgments § 17 (1982) (a final judgment in a civil defendant's favor on a claim "bars a subsequent action on that claim"). This is no less true when the collateral attack targets the Commission's subject-matter jurisdiction because "[e]ven subject-matter jurisdiction . . . may not be attacked collaterally" once the decision becomes final on direct review. *See Travelers Indem. Co. v. Bailey*,

557 U.S. 137, 152 (2009) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 n.9 (2004)). "[T]he need for finality forbids a court called upon to enforce a final order to 'tunnel back . . . for the purpose of reassessing prior jurisdiction de novo.'" *Id.* at 154 (quoting *In re Optical Techs., Inc.*, 425 F.3d 1294, 1308 (11th Cir. 2005)); *see Willy v. Coastal Corp.*, 503 U.S. 131, 137 (1992) ("[T]he practical concern with providing an end to litigation justifies a rule preventing collateral attack on subject-matter jurisdiction.").

¶12      Legacy points to our supreme court's *Legacy I* opinion in arguing that its special-action complaint was a proper collateral attack on the Commission's subject-matter jurisdiction. Our supreme court, however, noted that it expressed no view whether Legacy could pursue alternative procedural means to challenge the Commission's penalty order as void. This question was not before the court at that time. Our supreme court's statement, therefore, does not support Legacy's argument.

¶13      Legacy also cites this court's prior decisions to argue that its special-action complaint is a proper collateral attack on the Commission's subject-matter jurisdiction. But those decisions do not support allowing Legacy to collaterally attack the Commission's subject-matter jurisdiction after it failed to properly seek appellate review of the Commission's ruling rejecting Legacy's argument. While this court previously stated in those decisions that a collateral attack on jurisdictional grounds is allowed, each involved a situation in which the party did not have an opportunity to raise that issue in the prior proceeding. *See Miller v. Ariz. Corp. Comm'n*, 227 Ariz. 21, 24 ¶ 9 (App. 2011); *Sprang v. Petersen Lumber, Inc.*, 165 Ariz. 257, 264 (App. 1990); *Ariz. Bd. of Regents,* 160 Ariz. at 154–55; *see also Tucson Warehouse & Transfer Co. v. Al's Transfer, Inc.*, 77 Ariz. 323, 324–28 (1954) (although not directly stated, party did not have opportunity to raise issue in prior proceeding). None of those decisions held that a party that challenged an administrative agency's jurisdiction in a prior proceeding may do so again in a collateral proceeding. They are therefore inapplicable.

¶14      Here, Legacy challenged the Commission's subject-matter jurisdiction in the administrative proceeding and then forfeited its right to challenge that decision by failing to timely appeal. Our supreme court noted in *Legacy I* that A.R.S. § 12–902(B) does not "provide limitless entitlement to challenge an administrative agency's jurisdiction through direct appeal." Similarly, Legacy's right to challenge the Commission's jurisdiction through collateral attack is not unlimited. "It is just as important that there should be a place to end as that there should be a place to begin litigation." *Travelers Indem. Co.*, 557 U.S. at 154 (quoting *Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938)). Allowing Legacy to challenge the

Commission's subject-matter jurisdiction after it already did so in the administrative proceeding would short-circuit the principles of claim preclusion. *See id.*; *see also Willy*, 503 U.S. at 137. Because Legacy challenged the Commission's jurisdiction in the administrative proceeding and failed to timely appeal, it cannot collaterally attack the Commission's subject-matter jurisdiction now.

¶15 Legacy concedes that the Restatement (Second) of Judgments § 12 provides that a party may not challenge a tribunal's subject-matter jurisdiction in subsequent litigation but argues that the Restatement does not apply in Arizona when contrary state court decisions, statutes, or rules of procedure apply. The difficulty with this argument, however, is that no Arizona appellate court decision, statute, or rule has addressed whether a party that has already raised jurisdictional issues can do so again in a collateral proceeding. Legacy also argues that Arizona Rule of Procedure for Special Actions 3(b) specifically permits a party to raise questions concerning jurisdiction in a special action. But that rule, as with the other authorities Legacy cites, does not address whether a party may raise subject-matter jurisdiction in a special action when the party already litigated that issue to judgment in a previous proceeding. We therefore follow the Restatement and hold that Legacy may not collaterally attack the Commission's exercise of subject-matter jurisdiction in the prior administrative proceeding. *See Delci v. Gutierrez Trucking Co.*, 229 Ariz. 333, 337 ¶ 16 (App. 2016) ("[A]bsent Arizona law to the contrary, Arizona courts will usually apply the law of the Restatement.").

¶16 Legacy notes that the Restatement identifies two exceptions to claim preclusion. First, claim preclusion does not apply to collateral attacks on subject-matter jurisdiction if "[t]he subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority." Restatement (Second) of Judgments § 12(1). Legacy argues that the Commission's exercise of subject-matter jurisdiction was a manifest abuse of authority because the Commission's jurisdiction "extends to expenditures made 'by or on behalf of any candidate,'" and Legacy is not a candidate.

¶17 This exception does not apply because the Commission's exercise of subject-matter jurisdiction here was not a manifest abuse of authority. The exception is narrowly applied to "egregious cases where a court lacks the power to hear a particular class of case." *In Interest of A.E.H.*, 468 N.W.2d 190, 206 (Wis. 1991). Legacy does not argue that the Commission improperly exercised subject-matter jurisdiction over an entire category of cases. Rather, it argues that the Commission's exercise of

jurisdiction over this particular case was improper. But the question is "not whether a court makes a proper or improper determination of subject-matter jurisdiction in a particular case[,]" but whether it lacks jurisdiction over an entire category of cases, *In re C.L.S.*, 225 A.3d 644, 650–51 (Vt. 2020), such as a bankruptcy court handling a criminal trial, *Travelers Indem. Co.*, 557 U.S. at 153 n.6. "Otherwise, *every* jurisdictional error could arguably be characterized as a manifest abuse of authority, and the exception would be rendered meaningless." *In Interest of A.E.H.*, 468 N.W.2d at 206. Therefore, Legacy has not shown a manifest abuse of authority by the Commission's exercise of subject-matter jurisdiction.

¶18          Second, Legacy argues, claim preclusion does not apply to collateral attacks on subject-matter jurisdiction when "[a]llowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government." Restatement (Second) of Judgments § 12(2). Legacy argues that the Commission's exercise of subject-matter jurisdiction infringes on the authority of the Arizona Secretary of State as well as the Arizona Attorney General, which it contends have exclusive enforcement authority over independent campaign contributions. The Commission's enforcement of the Act does not have that effect, however, because A.R.S. § 16–956(A)(7) expressly authorizes the Commission to enforce the Act, and the Commission has the sole power to investigate and enforce violations of the Act. *See Ariz. Advocacy Network Found. v. State*, 250 Ariz. 109, 121 ¶¶ 56–57 (App. 2020). This exception is therefore inapplicable.

¶19          Legacy argues further that claim preclusion does not apply because the Commission infringed on its free speech rights. Legacy's argument, however, does not relate to any of the exceptions provided by the Restatement (Second) of Judgments § 12 and is instead an argument on the merits. Legacy also fails to show how enforcing the principles of finality interferes with its free speech rights. It therefore has not shown that this case fits under one of the narrow exceptions to the application of claim preclusion. As a result, Legacy is precluded from collaterally attacking the Commission's exercise of subject-matter jurisdiction in the administrative proceeding.

¶20          The dissent asserts that subject-matter jurisdiction—especially of administrative agencies—is of such importance that a party must be able to raise it anytime. *Infra* ¶¶ 29–31. But no matter how important an issue is—even one as important as subject-matter jurisdiction—a system of ordered litigation and final resolution of disputes cannot function effectively if an unsuccessful litigant can attack a final

resolution in a subsequent collateral proceeding. *See Travelers Indem. Co.*, 557 U.S. at 152; *Kontrick*, 540 U.S. at 455 n.9; *Willy*, 503 U.S. at 137. Application of claim preclusion to subject-matter jurisdiction has been the law for more than a century, *see Des Moines Navigation & R. Co. v. Iowa Homestead Co.*, 123 U.S. 552, 557–59 (1887) (citing cases), and no Arizona decision contradicts this principle.

¶21　　　This is not a situation in which a litigant had no earlier opportunity to litigate the agency's jurisdiction. Legacy challenged the Commission's subject-matter jurisdiction in proceedings before the Commission itself, and when the Commission rejected Legacy's argument, Legacy had the statutory right to seek review of that determination, A.R.S. § 16–957(B), but forfeited that right by not asserting it timely. Legacy's forfeiture does not entitle it to a second opportunity. *See Legacy I*, 243 Ariz. at 406 ¶ 8 ("[W]e are 'not free to ignore the clear statutory language of A.R.S. § 16–957(B) and create jurisdiction in the superior courts where the legislature has provided to the contrary.'").

¶22　　　The dissent posits that we are establishing an exception to the well-settled rule that subject-matter jurisdiction can be neither waived nor stipulated to. Instead, we are simply applying the well-settled rule—as announced by the United States Supreme Court—that principles of claim preclusion apply to jurisdictional determinations—both subject matter and personal. *See Ins. Corp. of Ireland, Ltd.* 456 U.S. at 702 n.9 (citing *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371 (1940); *Stoll v. Gottlieb*, 305 U.S. 165 (1938)). After losing its jurisdictional challenge before the Commission, Legacy had the statutory right under A.R.S. § 16–957(B) to seek review of the Commission's subject-matter jurisdiction within 14 days of the Commission's ruling but failed to do so. The appeal was a necessary part of vindicating Legacy's legal position. *Cf. Rancho Pescado, Inc. v. Nw. Mut. Life Ins. Co.*, 140 Ariz. 174, 181–82 (App. 1984) (party failed to take advantage of a statutory right to appeal denial of a motion to arbitrate and filed breach of contract action instead; party cannot challenge denial of motion to arbitrate on appeal on the breach of contract action).

¶23　　　Although the dissent emphasizes that the only determination of jurisdiction has been by the administrative agency itself, the hearing before the administrative agency was merely the beginning of a judicial process that allowed an appeal of the administrative agency's jurisdiction to the superior court, this court, and the Arizona Supreme Court. *See* A.R.S. §§ 12–901 to –914, 16–957(B). And Legacy's failure to timely appeal from the administrative agency's decision is no different than a failure to timely appeal from a superior court decision, or a failure to seek review from one

of this court's decisions. Under either scenario, the failure to properly seek review results in a final judgment that cannot be collaterally attacked in a subsequent proceeding.

¶24 Our decision does not give special consideration or deference to an administrative agency. Nor does it suggest that a litigant would be better off by not diligently contesting an agency's jurisdiction in an administrative proceeding. Instead, we hold simply that procedural bars created by a failure to appeal from the superior court or from the court of appeals likewise apply to a failure to appeal from an administrative agency decision.

¶25 The dissent also takes issue with our citation to principles of claim preclusion set forth in the Restatement (Second) of Judgments § 12. *Infra* ¶ 32–36. But Arizona typically applies the Restatements of Law when no statute, rule, or appellate decision contradicts them and "when [they] set[] forth sound legal policy." *In re Sky Harbor Hotel Prop.*, 246 Ariz. 531, 533 ¶ 6 (2019) (quoting *CSA 13-101 Loop, LLC v. Loop 101, LLC*, 236 Ariz. 410, 414 ¶ 18 (2014)). Not only does § 12 set forth the sound legal policy of establishing an endpoint to litigation that is consistent with United States Supreme Court authority, but no controlling Arizona legal authority contradicts it. Furthermore, our primary analysis of and reliance on the Restatement is in connection with our conclusion that the *exceptions* to claim preclusion proffered under the Restatement do not apply to the facts here. Under these circumstances, the analytic framework the Restatement sets forth is persuasive and compelling.

¶26 The dissent cites *State v. Espinoza*, 229 Ariz. 421 (App. 2012), as authority for declining to follow § 12. *Infra* ¶ 35. But that decision addressed whether an adult could be *criminally* prosecuted for failing to register as a sex offender, holding that the court that had originally imposed the registration requirement lacked jurisdiction to do so. *Espinoza*, 229 Ariz. at 429 ¶ 34. The decision involved issues of criminal liability and the loss of personal liberty that are not present in this case, and for that reason it does not guide our decision. Moreover, the decision specifically recognized that its holding was an exception to Arizona's adoption of "a modern approach[] in conformity with the Restatement" in addressing the effect of a final judgment.[1] *Id.*

---

[1] The Arizona Supreme Court recognized that the consequences of an incorrect jurisdictional decision in a criminal prosecution is so great that it

¶27        The trial court therefore did not err in dismissing Legacy's special-action complaint or in granting the Commission summary judgment. Because Legacy's collateral attack is precluded, we do not consider its argument that this court can independently review the Commission's subject-matter jurisdiction.

**CONCLUSION**

¶28        For the foregoing reasons, we affirm the trial court's dismissal of Legacy's special-action complaint and its granting the Commission summary judgment in the enforcement action.

---

adopted rules of criminal procedure that exempt jurisdictional issues from the application of normal rules of preclusion in post-conviction proceedings. *See* Ariz. R. Crim. P. 32.1(b); 32.2(b). The supreme court has not created a similar exception in civil proceedings. This highlights that *Espinoza*'s holding is limited to criminal proceedings and has no greater application.

**B A I L E Y**, Judge, dissenting:

¶29 I respectfully dissent. In my view, by failing to timely appeal the agency's final ruling, Legacy forfeited the right to challenge nearly all the agency's actions. But for the reasons set forth below, it did not, and could not, forfeit the right to challenge the agency's subject-matter jurisdiction.

¶30 The majority recognizes that "administrative decisions which go beyond an agency's statutory power are vulnerable for lack of jurisdiction and may be questioned in a collateral proceeding." *Supra* ¶ 8 (quoting *Ariz. Bd. of Regents ex rel. Univ. of Ariz. v. State*, 160 Ariz. 150, 156 (App. 1989) (citations omitted)). This principle extends broadly, even to courts of general jurisdiction, and pervades our procedural rules. Our courts have long recognized that judgments of a court or agency lacking subject-matter jurisdiction are void and subject to collateral attack. *See, e.g., Chaparro v. Shinn*, 248 Ariz. 138, 142-43, ¶ 22 (2020) (citing *Walker v. Davies*, 113 Ariz. 233, 235 (1976)); *Sch. Dist. #1 of Navajo Cnty. v. Snowflake Union High Sch. Dist.*, 100 Ariz. 389, 391-92 (1966) (citing *Dockery v. Cent. Ariz. Light & Power Co.*, 45 Ariz. 434, 449-50 (1935) (citations omitted)). Our procedural rules likewise go to great lengths to provide parties relief from such judgments. For example, Arizona Rule of Civil Procedure 60(c) allows a party only six months to raise most challenges to a judgment, but the rule imposes no deadline on a challenge to a void judgment. *See Legacy Found. Action Fund v. Citizens Clean Elections Comm'n* (*Legacy I*), 243 Ariz. 404, 407-08, ¶¶ 15-17 (2018) (contrasting time limit imposed by statute to appeal from an agency determination under A.R.S. § 12-902 and the ability to seek relief from void judgments beyond the normal time limits under Rule 60(c) or otherwise collaterally challenge a void judgment). And, contrary to the majority's framing, Rule 3(b) of the Arizona Rules of Procedure for Special Actions imposes no limit on a collateral challenge to a judgment on jurisdictional grounds.

¶31 Subject-matter jurisdiction can neither be waived nor conferred by stipulation. A court simply cannot hear a case over which it has no jurisdiction. *See State v. Maldonado*, 223 Ariz. 309, 311, ¶ 14 (2010). Even A.R.S. § 12-902(B), a statute *Legacy I* made clear does not directly apply to this case, does not in my view grant extended appeal rights to some litigants. Instead, it merely recognizes Arizona precedent on challenges to subject-matter jurisdiction.

¶32 Here, the majority chooses to establish an exception to this well-settled rule where an agency has made a contested determination as

to its own jurisdiction. The majority largely bases its decision on the Restatement (Second) of Judgments § 12 (1982) and federal procedural law, which has long been inconsistent with Arizona's approach. I am not persuaded that the majority's "turn to the Restatement" is appropriate, and I find the federal cases inapposite.

**¶33** The comment to Restatement § 12 notes that the issue we confront presents a "sharp conflict of basic policies," i.e., a clash between principles of finality and validity. Restatement (Second) of Judgments § 12 cmt. a. As Comment a explains,

> If the question is decided erroneously, and a judgment is allowed to stand in the face of the fact that the court lacked subject matter jurisdiction, then the principle of validity is compromised. On the other hand, if the judgment remains indefinitely subject to attack for a defect of jurisdiction, then the principle of finality is compromised.

**¶34** Under the "traditional doctrine," the conflict is resolved in favor of validity. *See id.* By contrast, the "modern procedural regime" grants preclusive effect to judgments issued without subject-matter jurisdiction. *See id.* at cmt. c, e.

**¶35** The majority favors the "modern procedural regime," appealing to general principles of finality that until now have peacefully coexisted with an exception for subject matter jurisdiction. In so doing, the majority gives no heed to the fact that the subject-matter jurisdiction of an administrative agency to act in a quasi-judicial role is established by statute, not by the agency itself. Thus, the result disregards the danger of administrative overreach when an agency is allowed to determine for itself the extent of its jurisdictional power. Though I think the majority's new rule is especially problematic in the administrative context, the majority's decision to look to the Restatement to resolve this issue is itself problematic. We turn to the Restatement only when Arizona law is silent. Here, in another case, this court has noted that Arizona still follows the traditional doctrine on "true" questions of subject-matter jurisdiction:

> In the context of challenges to criminal judgments that have become final, our state has adopted a modern approach, in conformity with the Restatement, which resists the temptation to characterize even serious procedural irregularities as violations of jurisdictional court authority. *See, e.g., Maldonado,* 223 Ariz. [at 312], ¶ 18 . . . . But

> true jurisdictional limitations on a court's authority remain and it is our conclusion that one of those boundaries has been breached here.

*State v. Espinoza*, 229 Ariz. 421, 429, ¶ 34 (App. 2012). The majority summarily distinguishes *Espinoza* as relating to "criminal liability." I see *Espinoza* as affirming that, for "true jurisdictional limitations," validity still trumps finality, even for courts of general jurisdiction.

¶36 Moreover, the modern approach advanced by the majority (and the Restatement) contorts basic principles of Arizona law, and logic itself, toward the end of judicial economy and finality, neither of which is meaningfully threatened by the more consistent traditional approach.

¶37 Claim and issue preclusion, on their own terms, apply only to a judgment or ruling issued by a body with subject-matter jurisdiction. Among the elements of issue preclusion is that the earlier decision be "a valid and final decision on the merits." *Garcia v. Gen. Motors Corp.,* 195 Ariz. 510, 514, ¶ 9 (App. 1999). Likewise, for claim preclusion to be effective, there must be "a final, valid judgment," *Banner Univ. Med. Ctr. Tucson Campus, LLC v. Gordon*, 249 Ariz. 132, 136, ¶ 9 (App. 2020) (quoting *Circle K Corp. v. Indus. Comm'n*, 179 Ariz. 422, 425 (App. 1993)), "rendered by a court of competent jurisdiction," *Hall v. Lalli*, 194 Ariz. 54, 57, ¶ 7 (1999) (citations omitted).

¶38 The requirements of a "valid" decision and a "court of competent jurisdiction" mean that a court must have subject-matter jurisdiction over a dispute before its ruling may acquire preclusive effect. Here, any application of preclusion to the agency findings must include a determination that the agency had subject-matter jurisdiction. If the agency did not have subject-matter jurisdiction, there is no preclusion. If the agency had subject-matter jurisdiction, Appellant's petition for relief fails. Either way, Appellant's challenge to jurisdiction must be considered.

¶39 Further, the majority's rule seems to punish parties for raising defenses. On one hand, if an agency exercises excessive power against a party whose counsel is lackadaisical and fails to raise a genuine jurisdictional issue, the party later may collaterally challenge the agency's abuse of authority, presumably long after the expiration of any time to appeal (a right that survives this majority opinion). On the other hand, if an administrative agency exercises powers beyond its authority, *over the party's objection*, then its abuse of authority cannot be challenged collaterally. Waiver is rewarded, while a diligent defense is punished.

**¶40** Finally, the majority raises the specter that our system would not function effectively if this court were to recognize Appellant's challenge. But if courts have not, until now, applied the majority's limits to subject-matter jurisdiction challenges, then there is no reason to expect anything different than we've seen in the past, i.e., that other restraints sufficiently limit frivolous collateral challenges to subject-matter jurisdiction.

**¶41** In the end, we err by applying the so-called modern rule from the Restatement and the federal procedural law on which the majority relies. Instead, under Arizona statutes and rules, the potential injustice when an agency acts beyond its statutory authority outweighs any interest in finality and judicial economy.



AMY M. WOOD • Clerk of the Court
FILED:    AA

14