IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

ABELARDO CHAPARRO
*Plaintiff,*

*v.*

DAVID C. SHINN,
*Defendant.*

No. CV-19-0205-CQ
Filed March 5, 2020

Certified Question from the
United States District Court for the District of Arizona
No. CV 19-00650-PHX-DWL (MHB)
**QUESTION ANSWERED**

COUNSEL:

Mark Brnovich, Arizona Attorney General, Oramel H. Skinner, Solicitor General, Drew C. Ensign (argued), Deputy Solicitor General, Rusty D. Crandell, Deputy Solicitor General, Brunn (Beau) W. Roysden III, Division Chief Appeals & Constitutional Litigation Division, Robert J. Makar, Anthony R. Napolitano, Assistant Attorneys General, Phoenix, Attorneys for Defendant David C. Shinn, Director, Arizona Department of Corrections

Lindsay Herf, Robert J. Dormady, Katherine Puzauskas, Arizona Justice Project, Phoenix; Howard R. Cabot, Randal B. McDonald (argued), Austin C. Yost, Perkins Coie LLP, Phoenix, Attorneys for Abelardo Chaparro

JUSTICE BEENE authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, GOULD, LOPEZ, and PELANDER (RETIRED)* joined.

———————————

JUSTICE BEENE, Opinion of the Court:

¶1        The United States District Court for the District of Arizona certified the following question to this Court: Whether, in light of A.R.S. § 41-1604.09, a person convicted of first degree murder following a jury trial for actions that took place on or after January 1, 1994, is parole eligible after 25 years when the sentencing order states that he is sentenced to "life without possibility of parole for 25 years."

¶2        We hold that a sentence imposing "life without possibility of parole for 25 years" means the convicted defendant is eligible for parole after serving 25 years' imprisonment despite § 41-1604.09's prohibition of parole for persons convicted of offenses occurring on or after January 1, 1994. Additionally, we hold that a court lacks jurisdiction to correct an illegally lenient sentence absent timely correction or appeal. *State v. Dawson*, 164 Ariz. 278, 286 (1990).

## BACKGROUND

¶3        In 1993, the Arizona Legislature amended § 41-1604.09 to eliminate parole for all offenses committed on or after January 1, 1994. On July 25, 1996, a jury found Abelardo Chaparro guilty of first degree murder committed on May 21, 1995. At the sentencing hearing and in the ensuing minute entry, the trial court sentenced Chaparro to prison for "the rest of [his] natural life without the possibility of parole for 25 years, followed by a consecutive term of community supervision equal to one day for every seven days of sentence imposed." On December 6, 1996, however, the trial

———————————

* Justice William G. Montgomery has recused himself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable John Pelander, Justice of the Arizona Supreme Court (Retired), was designated to sit in this matter.

court issued a *nunc pro tunc* order ("December Order") clarifying that Chaparro's sentence was "Life without possibility of parole for 25 years." The December Order did not amend the term of community supervision. The State did not appeal.

¶4            In April 2017, the Arizona Department of Corrections ("ADOC") informed Chaparro he would not be parole eligible and that his only avenue for release would be to apply for commutation of his prison sentence after serving 25 years.   Subsequently, Chaparro repeatedly requested parole eligibility with ADOC officials, who denied those requests.   In February 2018, Chaparro received a letter from ADOC informing him that he "would not be parole certified."

¶5            Chaparro has served 24 years of his sentence.  Accordingly, if Chaparro is parole eligible, ADOC would have been required under § 41-1604.09(D) to initiate parole proceedings in January 2020.  Asserting his entitlement to parole eligibility after serving 25 years, Chaparro sued ADOC in federal district court under 42 U.S.C. § 1983.  The State filed a Motion for Certification or Dismissal in the district court to determine if Chaparro's sentence entitles him to parole eligibility.  The district court granted the State's certification request and issued a Certification Order.

¶6            We have jurisdiction pursuant to article 6, section 5(6) of the Arizona Constitution and A.R.S. § 12-1861.

## DISCUSSION

¶7            The trial court sentenced Chaparro to "[l]ife without possibility of parole for 25 years."  The State contends this sentence does not make Chaparro eligible for parole.  It argues the sentence is ambiguous because it is unclear as to what happens after Chaparro serves 25 years of the sentence and whether "parole" could mean another form of release. Finally, the State asserts that even if the sentence does provide for parole, a court cannot enforce the illegally lenient sentence.  Chaparro argues his illegally lenient parole eligible sentence is unambiguous and final under Arizona law.

**A.**

**¶8**         We first address whether Chaparro's sentence provides the possibility of parole.  We conclude that although the trial court's use of "parole" and "community supervision" is ambiguous, the December Order and the sentencing transcript demonstrate that the trial court intended for Chaparro to be eligible for parole after 25 years' imprisonment.  *See State v. Ovante*, 231 Ariz. 180, 188 ¶¶ 38–39 (2013) (stating courts interpret a criminal sentence with the goal of giving effect to the sentencing court's intent).

**¶9**         Generally, language is deemed ambiguous "when it is open to multiple reasonable interpretations."  *Glazer v. State*, 244 Ariz. 612, 614 ¶ 12 (2018).  If the language is subject to more than one reasonable interpretation, we will resolve the ambiguity by examining other factors, including the surrounding circumstances.  *See Ryan v. Napier*, 245 Ariz. 54, 64 ¶ 41 (2018).

**¶10**         Chaparro's sentence is ambiguous because it refers both to "parole," which was abrogated before the conduct that resulted in his conviction, and to "community supervision," which applied to all qualifying offenses committed on or after January 1, 1994.  *See* § 41-1604.09; *compare* A.R.S. § 41-1604.07 (1993), *with* § 41-1604.07 (1994).  Because the trial court's sentencing language is ambiguous, we look to the surrounding circumstances.  *See Ryan*, 245 Ariz. at 64 ¶ 41.

**¶11**         The trial court's December Order illustrates that it intended Chaparro to have the possibility of parole after 25 years.  Chaparro's original sentence stated "natural life," which would contradict the "possibility of parole."  *See* A.R.S. § 13-703(A) (1993) ("An order sentencing the defendant to natural life is not subject to commutation or parole, work furlough or work release.").  But the December Order removed "natural," clarifying that Chaparro's sentence was "[l]ife without possibility of parole for 25 years."  If the reference to "parole" was also incorrect or unintended, the trial court could have similarly corrected that aspect of Chaparro's sentence.  Because it did not, the only reasonable inference is that the trial court intended "[l]ife without possibility of parole for 25 years" to indicate that after 25 years Chaparro would be eligible for parole.  *See State v. Cruz-*

*Mata*, 138 Ariz. 370, 374, 376 (1983) (finding before 1994 that a "life sentence without possibility of parole for 25 years" meant that the "minimum term of imprisonment is 25 years [minus credit for pre-sentence custody] before he is eligible for parole").

**¶12**　　　　Similarly, the transcript of the sentencing hearing clarifies that the trial court believed parole was an available sentencing option regardless of the reference to community supervision.　During the sentencing hearing the trial court explained the sentencing options:

> Do you understand one of them is death, one of them is life imprisonment for the rest of your natural life, and the other one is life imprisonment without possibility of parole for 25 years? . . . Those are the only three things I can do.

The trial court did not mention release or commutation as an option. Therefore, although community supervision does not apply to a parole eligible inmate, the sentencing hearing and December Order manifest the trial court's intent for Chaparro to be parole eligible.

**¶13**　　　　We are also unpersuaded by the State's argument that "parole" is shorthand for "release" in the form of commutation.　At the time of sentencing, Arizona laws differentiated the terms "parole" and "commutation."　*See* § 13-703(A) (1993) ("An order sentencing the defendant to natural life is not subject to commutation or parole . . . ."). Section 13-703(A) also specified other types of release.　*Id.*　(listing work furlough and work release).　Nothing indicates the trial court intended its repeated references to "parole" to mean "commutation" or any alternate type of "release."

**¶14**　　　　Dictionary definitions, Arizona law, and federal law all distinguish parole and other forms of release like commutation.　"Absent statutory definitions, courts apply common meanings and may look to dictionaries."　*State v. Pena*, 235 Ariz. 277, 279 ¶ 6 (2014) (internal citations omitted).　"Parole" has a distinct meaning from "commutation" in the dictionary.　*Compare Parole*, Black's Law Dictionary (11th ed. 2019) ("[C]onditional release of a prisoner from imprisonment before the full sentence has been served."), *with Commutation*, Black's Law Dictionary

(11th ed. 2019) ("[E]xecutive's substitution in a particular case of a less severe punishment for a more severe one that has already been judicially imposed on the defendant.").

¶15 Similarly, Arizona statutory law distinguishes parole and forms of executive clemency like commutation. Pursuant to A.R.S. § 31-412(A), an inmate certified as parole eligible must only show "a substantial probability that the applicant will remain at liberty without violating the law and that the release is in the best interests of the state." But an inmate applying for commutation must show "by clear and convincing evidence that the sentence imposed is clearly excessive . . . and that there is a substantial probability that when released the offender will conform the offender's conduct to the requirements of the law." A.R.S. § 31-402(C)(2). The Board of Executive Clemency may grant parole by a majority or unanimous vote, whereas it may only recommend commutation to the Governor for approval. §§ 31-402(A), -412(C). Individuals not granted parole are automatically re-certified within six months to a year, but an inmate denied commutation typically must wait five to ten years before reapplying. A.R.S. §§ 31-403, 41-1604.09(G). These statutory differences clarify that parole is not a form of executive clemency.

¶16 Finally, the United States Supreme Court has rejected the idea that parole is the same as executive clemency. *See Lynch v. Arizona*, 136 S. Ct. 1818, 1819 (2016) (stating the possibility of clemency does not diminish a capital defendant's right to inform a jury of his parole ineligibility); *Solem v. Helm*, 463 U.S. 277, 300–01 (1983) ("As a matter of law, parole and commutation are different concepts . . . . Parole is a regular part of the rehabilitative process. . . . Commutation, on the other hand, is an *ad hoc* exercise of executive clemency.").

¶17 In sum, although the trial court's use of "parole" and "community supervision" was ambiguous, the sentencing hearing and December Order clarify the trial court's intent to provide the opportunity for parole. And because the meaning of "parole" is not ambiguous or synonymous with other forms of release, Chaparro is eligible for parole after serving 25 years.

**B.**

**¶18**        The parties agree that Chaparro's sentence, as interpreted above to include parole eligibility after he has served 25 years, is illegally lenient because it violates § 41-1604.09, as amended in 1993.  However, the State argues that a court cannot enforce an illegally lenient sentence.  We find the sentence is final and enforceable.

**¶19**        Illegally lenient sentences are final under Arizona law absent timely appeal or post-judgment motion.  *See Dawson*, 164 Ariz. at 283–84; Ariz. R. Crim. P. 24.3 (providing that the trial court may correct an unlawful sentence upon a timely motion).  Here, the State did not appeal Chaparro's sentence pursuant to A.R.S. § 13-4032, which allows the state to appeal "[a] sentence on the grounds that it is illegal."  And "[t]he only statutory power we are afforded to *increase* an illegal sentence to conform to the judgment of conviction is predicated '[u]pon an appeal by the *state*.'"  *Dawson*, 164 Ariz. at 284 (quoting A.R.S. § 13-4038).  Absent an appeal by the state, this Court does not have jurisdiction to correct sentencing errors alleged by the state.  *Id.* at 286.

**¶20**        The State attempts to distinguish the illegally lenient sentence in *Dawson*, which allowed for parole eligibility sooner than statutorily permitted, from Chaparro's illegally lenient sentence.  It claims the trial court violated separation of powers by creating parole eligibility for Chaparro—a purely legislative function—and that the "court is utterly without power to make a defendant parole eligible where statutory law prohibits it."  *See State v. Miranda*, 200 Ariz. 67, 69 ¶ 5 (2001) ("Defining crimes and fixing punishments are functions of the legislature.").  But the State recognizes in its brief that "[m]ere misapplication of the governing law" does not raise separation of powers concerns.  That is precisely what occurred both here and in *Dawson*.

**¶21**        Rather than perform a legislative function, the trial court misapplied the law when it conferred parole eligibility.  Therefore, the trial court did not violate separation of powers by including, albeit incorrectly, parole eligibility in its sentencing order, nor does this Court do so by upholding that sentence, which the State failed to appeal.  Rather, as in *Dawson*, absent a timely appeal, the illegally lenient sentence must stand.

*See* 164 Ariz. at 280 ("Unless an appellate court has the constitutional or statutory power to act to correct such an error, its refusal to act cannot violate the constitutional doctrine of separation of powers.").

**¶22**       We also reject the State's argument that the sentence is subject to collateral challenge because it is void. *See Walker v. Davies*, 113 Ariz. 233, 235 (1976) (stating a judgment that is "void upon its face" may be collaterally attacked at any time). Here, because the trial court had subject matter jurisdiction, the "order is voidable, rather than void." *See* Ariz. Const. art. 6, § 14; *see also State v. Bryant*, 219 Ariz. 514, 518 ¶ 14 (App. 2008) (citation omitted). When "the trial court has jurisdiction over the subject matter and parties," the judgment, "even if voidable and erroneous, [can] only be modified on appeal or by proper and timely post-judgment motion." *Bryant*, 219 Ariz. at 517–18 ¶¶ 13, 15. Therefore, because the State failed to timely appeal, this Court does not have subject matter jurisdiction to correct the sentence.

## CONCLUSION

**¶23**       For the foregoing reasons, we answer the district court's certified question as follows: Regardless of § 41-1604.09, Chaparro is eligible for parole after serving 25 years pursuant to his sentence, and his illegally lenient sentence is final under Arizona law.